IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHAWN SOWELL-ALBERTSON,

      Plaintiff,

vs.                                        No. CIV 04-0760 RB/LFG

THOMAS & BETTS CORPORATION,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendant's ("T&B's") Motion to Dismiss, or, in the Alternative, for a More Definite Statement (Doc. 8), filed on September 24, 2004. Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion should be granted as to Count III, but otherwise denied.

**I.     Background.**

On April 17, 2000, Plaintiff ("Sowell-Albertson") was hired by T&B to work as Master Scheduler in its Albuquerque, New Mexico plant. (Compl. ¶ 5.) Shortly thereafter, Sowell-Albertson received a positive performance review and was promoted to Purchasing Manager. (Compl. ¶ 6–7.) In July 2001, Sowell-Albertson was promoted to Materials Manager. (Compl. ¶ 8.) During her employment, there were at least nine management positions at the Albuquerque plant, but Sowell-Albertson was the only female manager. (Compl. ¶ 9-10.)

In August 2001, Charlie Ochinegro became Plant Manager. (Compl. ¶ 13.) In January 2002, Ochinegro demoted Sowell-Albertson to Purchasing Manager without cause. (Compl. ¶ 14.) A few months later, Ochinegro hired Ed Zielinski, an outsider male, as Materials Manager. (Compl. ¶ 16.)

After Zielinski was terminated in September 2002, Sowell-Albertson was assigned the reporting duties of Materials Manager, even though she still held the title of Purchasing Manager, an inferior position. (*Id.*) In November 2002, John Young, a male, was hired to replace Zielinski as Materials Manager. (*Id.*)

As Purchasing Manager, Sowell-Albertson supervised two or three employees. (Compl. ¶ 18.) During the week of September 3, 2002, one of these employees, Linda Mojica, reported to Sowell-Albertson that Ochinegro had made a lewd comment to Mojica. (Compl. ¶ 19.) On September 26, 2002, Sowell-Albertson invited Ochinegro into her office, closed the door, informed him the comment was inappropriate, and asked him never to make such comments to any employees that she supervised. (Compl. ¶ 21.)

After the closed-door conversation, Ochinegro excluded Sowell-Albertson from management meetings and started to blame her for problems caused by other departments. (Compl. ¶ 22.) Ochinegro singled out Sowell-Albertson and told Young, Sowell-Albertson's direct supervisor, that Young needed to find a reason to fire her. (Compl. ¶ 23.) Sowell-Albertson was the only manager excluded from management meetings by Ochinegro. (Compl. ¶ 25.)

Beginning in November 2002, Ochinegro assigned Sowell-Albertson additional responsibilities, falsely accused Sowell-Albertson of causing problems, undermined her authority, berated Young for not performing duties properly performed by Sowell-Albertson, blamed Sowell-Albertson for errors caused by others, and put pressure on Young to fire Sowell-Albertson. (Compl. ¶ 27.)

On November 15, 2002, Sowell-Albertson reported the discriminatory treatment to T&B senior management. (Compl. ¶ 28.) T&B sent Diane Brown to conduct an investigation. (*Id.*) The

investigation was a sham and failed to protect Sowell-Albertson from further discrimination. (Compl. ¶ 29.)  After the investigation, Ochinegro sent Young a memo directing Young to fire Sowell-Albertson "and fast!" (Compl. ¶ 30.)  Based on the systematic harassment and the memo, Sowell-Albertson feared that it was just a matter of time until Young fired her.  (Compl. ¶¶ 30-31.)  Due to the stress, Sowell-Albertson's health declined, she sought medical treatment, and felt compelled to resign on January 10, 2003.  (Compl. ¶¶ 32-33.)

On June 24, 2003, Sowell-Albertson filed a charge of discrimination with the EEOC. (Compl. ¶ 3.)  On April 6, 2003, the EEOC issued a right to sue letter.  (*Id.*)  On July 6, 2004, Sowell-Albertson filed her complaint in this court alleging (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.*, as amended, ("Title VII"), and the New Mexico Human Rights Act, NMSA 1978, §28-1-1, *et seq.* ("NMHRA"); (2) negligent hiring, training and supervision under state law; and (3) wrongful termination under state law.  Sowell-Albertson seeks compensatory damages, punitive damages, interest, attorney fees, and costs.

**II.   Standard.**

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the plaintiff.  *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1336 (10th Cir. 1999).

3

**III. Discussion.**

    **A. Whether allegations relating to events that occurred before August 18, 2002 are time barred.**

Sowell-Albertson filed her charge of discrimination with the EEOC on June 24, 2003. Title VII requires a litigant to file a claim within 300 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1). T&B argues that allegations relating to events before August 18, 2002 are time-barred.

Sowell-Albertson has alleged gender discrimination based, in part, upon a hostile work environment. In a hostile work environment case, so long as an act contributing to the hostile work environment took place within the 300 day period, a court may consider the complete history of acts comprising that hostile work environment. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116-17 (2002); *Duncan v. City and County of Denver*, ___ F.3d ___, 2005 WL 352624 (10th Cir. 2005). Many of the hostile acts occurred during the 300 day period. Thus, acts comprising the hostile work environment that occurred before August 18, 2002 may be considered as part of the hostile work environment claim.[1]

    **B. Whether the complaint fails to state a claim of gender discrimination.**

T&B argues that the gender discrimination claim must be dismissed because Sowell-Albertson has alleged insufficient facts to establish a prima facie case of gender discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court held that *McDonnell Douglas* is an evidentiary standard and not a

---

[1] Recovery for discrete acts of discrimination that occurred prior to 300 days before the EEOC filing, such as the January 2002 demotion, would be time-barred. *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

pleading requirement. *Id.* at 510. Thus, a plaintiff need not plead a prima facie case under *McDonnell Douglas* to survive a motion to dismiss and must only conform with FED. R. CIV. P. 8(a). *Id.* at 513. The complaint adequately alleges gender discrimination. T&B may challenge Sowell-Albertson's ability to establish a prima facie case through a properly supported motion for summary judgment.

      **C.**    **Whether the complaint should be dismissed because T&B promptly addressed Sowell-Albertson's complaints and was never notified that its investigative and remedial action was ineffective.**

An employer may avoid liability for the harassing acts of its supervisory employees if it can prove a two-pronged affirmative defense. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 755 (1998). This defense is available only if no tangible employment action was taken by the harassing supervisor against the plaintiff and the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807. Sowell-Albertson has alleged that Ochinegro precipitated the constructive discharge by directing Young to fire her and that she reported the harassment to management. At this stage of the proceedings, the *Faragher-Ellerth* defense is inapplicable.

      **D.**    **Whether the NMHRA claim should be dismissed for failure to comply with the NMHRA grievance procedures.**

T&B contends that the NMHRA claim is barred because she did not specifically allege violations of the NMHRA in her charge of discrimination. Under New Mexico law, a plaintiff may exhaust her NMHRA claim by filing an EEOC claim, and if the New Mexico Human Rights Division has not acted on the claim, the issuance of the right to sue letter by the EEOC does not trigger the

5

time period for bringing a NMHRA claim. *See Mitchell-Carr v. McLendon*, 127 N.M. 282, 288, 980 P.2d 65, 71 (1999); *Sabella v. Manor Care, Inc.*, 121 N. M. 596, 599, 915 P. 2d 901, 904 (1996). Sowell-Albertson filed a charge of gender discrimination with the New Mexico Human Rights Division and the EEOC and received a right to sue letter from the EEOC. (Def. Ex. A.) Dismissal of the NMHRA claims under these circumstances would be inappropriate.

### E.  Whether the complaint fails to state a claim for negligent hiring, training, or supervision.

T&B argues that Sowell-Albertson failed to state a claim because she failed to allege that Ochinegro had harassed women in the past. Negligent hiring or retention does not require that the employer actually know of the employee's lack of fitness, but depends on whether the employer knew or should have known that the employee posed a risk of harm. *Los Ranchitos v. Tierra Grande, Inc.*, 116 N.M. 222, 228, 861 P.2d 263, 269 (Ct. App. 1993). The elements of this cause of action are (1) the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate, and (2) the employer knew or should have known that the employee was unfit. *Valdez v. Warner*, 106 N. M. 305, 307, 742 P. 2d 517, 519 (Ct. App. 1987).

Sowell-Albertson alleges that T&B should have been aware of Ochinegro's propensity to engage in misconduct, that it negligently trained Ochinegro, that it knew or should have known that intensive supervision was necessary to protect female employees, the supervision was inadequate and it was foreseeable that Ochinegro's conduct would harm employees. (Comp. ¶¶ 46-50.) The complaint adequately alleges the elements of the claim. T&B's motion for a more definite statement will be denied.

**F.     Whether the complaint fails to state a claim for wrongful termination.**

To establish a retaliatory discharge cause of action, Sowell-Albertson must demonstrate that she was discharged either because she performed an act that public policy has authorized or would encourage, or because she refused to do something required of her by her employer that public policy would condemn. *Silva v. Albuquerque Assembly & Distrib. Warehouse Corp.*, 106 N.M. 19, 21, 738 P.2d 513, 515 (1987). Sowell-Albertson asserts that the public policy at issue consists of Title VII and the NMHRA. (Pl. Resp. to Def.'s Mot. to Dismiss at 21.) Retaliatory discharge is inapplicable where other remedies are available to vindicate the alleged public policy violation. *McDonald v. Corrections Corp. of America*, 181 F.Supp.2d 1274, 1282 (D. N.M. 2002). The retaliatory discharge claim is indistinguishable from the Title VII and NMHRA claims. The alleged public policy violation may be vindicated under the terms of the statutes. Accordingly, Count III will be dismissed.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss, or, in the Alternative, for a More Definite Statement (Doc. 8), filed on September 24, 2004, is **GRANTED AS TO COUNT III, BUT OTHERWISE DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**